Last case, United States v. Morris, Ms. Welsh. Good morning, your honors. May it please the court, on behalf of Carl Morris. Some arguments that defendants submit to a district court in support of a lesser sentence are undeveloped, weak, or even frivolous. In those circumstances, the district court judge is not obligated to mention them or even acknowledge them when she is giving the reasons for the particular sentence that she has decided to impose. Those are not the types of arguments that Mr. Morris submitted to the district court here in support of his request for a sentence of 18 months' imprisonment. Mr. Morris put forth before the district court judge two principal arguments that were well-developed, and particularly with regard to his request that the district court exercise her discretion and use a one-to-one crack-to-powder-cocaine ratio. In speaking of discretion, does your client understand that if we vacate and remand, he could do worse on remand than he did the first time around? He received a below-guidelines sentence, and I just want to be absolutely certain that you are certain that he wants to risk that. Your Honor, clearly that risk is always there. I see that the arguments that Mr. Morris put forth here are worth the risk. This particular issue, the one-to-one crack-to-powder disparity, this particular district court judge has, in several cases, varied greatly from the otherwise applicable crack-cocaine guidelines and imposed sentences well below those. And as I set forth in the brief, the difference for Mr. Morris is quite measurable. Had the court adopted that argument and even rejected the second principal argument that he put forth, his range was 21 to 27 months, and again, the sentence that we requested was only three months below the low end. So, again, I think it is worth the risk, particularly in light of the fact that this judge has varied on that basis in these types of cases in the past. Here, in addition to that particular argument, Mr. Morris put forth an argument that his guideline range was driven by the inclusion of 45 grams of a look-alike substance that was treated as crack-cocaine for purposes of calculating the guideline range. He submitted that argument in a sentencing memorandum to the judge approximately one week before the sentencing hearing. It was a five-page single-space document. And then when we went to court for sentencing on May 21st of this year, the prosecutor took the opportunity to respond to Mr. Morris's argument. She did not discuss the request that the court use a one-to-one ratio, but did address the inclusion of the 45 grams, but was also quick to say that she wasn't asking or suggesting to the court that a within-guideline range sentence was even appropriate. And I think that circles back, Judge Rovner, to your initial point that not even the prosecutor was suggesting that a within-guideline range was appropriate here. Ms. Welsh, why is the defendant's sale of counterfeit drugs a mitigating factor? We don't know whether the judge would have considered it a mitigating factor. The argument that I put forth to the judge that it was mitigating was there were two actual controlled buys of a counterfeit substance here, and the total was 10.735 grams. The imitation substance was almost four times higher than the actual. I understand that, but why is that a mitigating circumstance if it indicates a willingness? I can see an argument that it creates a greater risk of violence. Not under the circumstances unique to this case, Your Honor. What was happening here was that it was a confidential informant that was working at the direction of local authorities. So the risk of violence I don't think is present here. Well, presumably your client didn't know that he was dealing with a CI. So if he's willing to sell counterfeit drugs on the street, why isn't that an indication, maybe an aggravating circumstance since it creates greater risks of violence and retaliation? Well, the evidence that we have in this case, Your Honor, was that at the time that the exchange was made of the counterfeit substance or the lookalike substance, that Mr. Morris was, in fact, very suspicious at this point that the gentleman that he had previously sold to was a confidential informant. He had become suspicious of that man the day before. Is the counterfeit drug counted given the same weight as the actual crack in deciding in the guidelines range? It was in this case, Your Honor, yes. But that's a matter of discretion for the judge? Correct. So we were asking that she exercise her discretion. So if the harm that we're looking at here is the actual quantity of a controlled substance that Mr. Morris put into the community, then that's 10.7 grams. But the guidelines do say you treat counterfeits as if they were what they are purported to be, correct? That's correct. Okay. The judge can do what she wants to with that fact, but that's how you do the guideline calculations? Yes, that's correct. I'm puzzled. I think you have a real argument about the counterfeit, but I don't know. Can a defendant just say to a judge, well, you know, this one-to-one ratio crack to ordinary cocaine? No, I forgot. What's the ratio? Right now it's 18-to-1. Oh, you wanted it one-to-one. That's correct, Your Honor. I'm sorry. Okay. Yes. Now, but it would be proper for a judge to say in that situation, look, I don't know that much about, you know, cocaine and what have you, and I don't want to get into this, you know. I don't know one-to-one, ten-to-one, three-to-one. Or at the very least, shouldn't the defendant present not just an oral statement, you know, should go to one-to-one, but shouldn't he present evidence of studies or some kind of systematic, responsible basis for the judge to adopt her own ratio? I have three responses to that, Your Honor. The first is that this particular district court judge, as I mentioned, is aware of the disparity and has, in fact, departed on that basis or varied on that basis in the past. But she's never said, I do one-to-one. She has never adopted her own. Okay, but the question is, does she have to adopt her own ratio when the defendant has failed to present any actual evidence that one-to-one is? She certainly is not required under any circumstance to declare that a particular ratio, one-to-one, three-to-one, ten-to-one, that I'm going to apply that across the board in any case. But did you, were you? I was counsel below, yes. Did you give her some particular reason why one-to-one would be appropriate for Morris? Is it connected with the counterfeit drugs? What I did in the written sentencing memorandum was ask the judge, and we do this repeatedly, is to ask her to apply one-to-one in every case that involves crack cocaine. And in the written submission, I cited several cases where, from different districts across the country, where those judges have applied a one-to-one ratio and the reasons that they've done this. So you did submit a written? Yes. She didn't comment? She made no comment whatsoever, Your Honor. That's correct. That was your first response. What were the other two to that question? Well, I just mentioned the other two. In fact, I did mention to the district court judge that other districts across the country are doing this, cited those cases. So she was aware of that. And the last one is that this particular judge, she's got a long and storied history in our district and certainly has heard these cases many, many times and was aware. Not in any of those cases has she chosen to adopt a specific range and apply that across the board, but she does vary on that basis. I thought part of your answer would include a reference to our decision in Johnson where we said that was an argument that deserved response. Yes. But as the government points out, there's some tension between Johnson and our opinions in, I think, Garthas and Schmitz, just to pick the recent ones, about whether a district judge needs to respond to, in essence, a generic challenge to a guideline. Help. This court has said, though, that a district court must comment on the one-to-one ratio if the defendant raises it because that argument has well-established legal merit. And then in this particular case, it wasn't just a generic challenge because I tied it into not only are his guidelines being driven by the 45-gram lookalike substance, but then the inclusion of that amount is being treated as crack cocaine, which in and of itself is being treated disparately by the continued use of the 18-to-1 grams. So the argument in this case really was tailored to the circumstances of Mr. Morris's offense. But I think you're suggesting at a minimum she should have said something like, well, I'm not going to consider the one-to-one because that raises fundamental questions. I don't want to get into that. But you must be concerned she may just have not noticed it or overlooked it. That's correct. I mean, had she said that, I probably wouldn't be here. I assume you made all this part of the oral presentation as well, right? Yes, Your Honor. Thank you. Okay. Well, thank you, Ms. Welsh. Ms. Rumbelow? Good morning, Your Honors. May it please the court, Rita Rumbelow for the United States. The government's primary argument in this case is that when Judge Crabb imposed sentence, she turned to defense counsel and said anything further. And defense counsel, despite having raised the sentencing enhancement argument and the one-to-one ratio request, sat there and told Judge Crabb, no, nothing. Yeah, but anything further sounds ñ no, that's not a good argument. Anything further could be understood to mean do you have additional arguments that you haven't made, right? But in a panel opinion from this court in July in Johnson, it's a non-published case, which the government cited in its brief, this court held specifically waiver when a court asked if the parties required anything further. But that was dicta, and it's unpublished. That's not right. And, you know, you conceded that the court failed to address either of the arguments. Well, as for the sentencing enhancement argument, the government noted as Mr. Morris was along with another person one day, and that person was selling crack cocaine. So Mr. Morris reached out to RCI after that. He solicited RCI and asked RCI to buy from him, all the while that he was on federal supervised release. I don't understand what this has to do with her oversight of the two issues that his lawyer argued. She did. She could have discussed the sentencing enhancement a little bit further, but she didn't. I mean, the counterfeit issue is an interesting, I mean, you know, Judge Hamilton made an argument why counterfeit should be counted the same as the legitimate cocaine. But there's an argument the other way, which is that suppose this fellow actually his access to crack is very limited, and so really he's basically a counterfeiter. Well, then he's really not a major deal. Now, there's the violence issue that Judge Hamilton, but on the other side is the fact that maybe the fact that he sells counterfeit crack means that he just doesn't have good access. So he's not, at least he's not making people drug addicts. Maybe he's getting them angry, right? Which could lead to violence. And they consume the counterfeit and they feel just as listless as they did before, right? Yes, but as the government pointed out at the sentencing, now I know the court didn't flesh it out as well as she could have perhaps, but the government pointed out when the CI requested one and a half ounces, Carl Morris could have said no. He could have said no. I can't get my hands on that. But this is a defendant who during the first control buy, He has to make a living, so he sells the counterfeit stuff. While on supervised release. He's not a good dealer. But as you say, there's this interesting question. Is it worse or better or what have you to be selling the counterfeit, to be doing counterfeiting of drugs? So if this is an arguable issue, it's clearly raised by the defendant's lawyer. And you'd think the judge would say something. And even with regard to the one to one, if the judge just, as Ms. Wells said, if the judge just said, look, I can't go there. I can't get into this one to one. It's beyond my knowledge of this business. That would be fine, okay? But if the judge doesn't mention anything, doesn't. But again, this court has held that just a blanket challenge. Look, you've misunderstood that further. Further means, or certainly can be understood reasonably to mean, do you have additional points you want to make? No, she doesn't want to make additional points. She would like you to address the points she made. Well, it's the government's contention that any error in this case was harmless. As Judge Rovner pointed out, he did receive a below guideline sentence. So in effect, some variance from the 18 to 1 ratio was applied. The question is not whether he received a below guideline sentence, but how far below, right? So maybe if the judge had thought about these points, about the counterfeit or maybe about the one to one, she would have reduced his sentence slightly. I think because Judge Crabb focused on the fact that this was his second federal drug conviction. He was on supervised release when he was selling crack cocaine. Now what you're doing is, this would be very easily answered by having the judge re-sentence him. But instead, you're making up theories as to get inside the judge's mind and say, second conviction, this, that, as if you knew what Judge Crabb would do. Well, those were the reasons she gave when she imposed sentence, Your Honor. Excuse me. Pardon? Those were her words. That's what she said when she imposed sentence. But she seems to have overlooked two arguments that may have gone the other way and given him a month off, right? Right. Well, the government's position is fully set forth in its brief, and we would ask the court to affirm that any procedural error was harmless. Thank you. Okay. Well, thank you, Ms. Rombolo. So, Ms. Welsh, do you have anything further? If there are any other questions, Your Honors, I'll rest my case. Okay. Well, you were appointed, were you not? I work for the Public Defender's Office. You're a public defender. Yes. Well, we thank you for representing us. Thank you. Tomorrow, we thank Ms. Rombolo for representing the government, and we'll be in recess. Okay. Thank you.